IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LESTER GLASSBURN,

    Plaintiff,

v.                                                                                       No. 1:12-cv-1107-JDB-egb

WEAKLEY COUNTY, SHERIFF MIKE WILSON,
SGT. DAVID ANDREWS, DEPUTY DEREK COBLE,
and DEPUTY GAVIN ELAM,

    Defendants.

---

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court is the motion of Defendants, Weakley County, Sheriff Mike Wilson, Sergeant David Andrews, Deputy Derek Coble, and Deputy Gavin Elam, for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. Plaintiff, Lester Glassburn, contends that the Defendant Sheriff deputies engaged in excessive force when they shot him during their investigative visit to his home. He seeks damages under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights under the United States Constitution. For the reasons stated herein, the Defendants' motion is GRANTED in part and DENIED in part.

I. Factual Background

On the night of May 7, 2011, Glassburn was at his home in Greenfield, Tennessee. (Compl., Docket Entry ("D.E.") 1, ¶ 8.) Plaintiff contends that he called a Veterans Affairs crisis hotline in order to obtain information on support groups dealing with disability claims. (Id. at ¶ 9.) During this call, he alleges the hotline operator persistently questioned if he was suicidal. (Glassburn Depo., D.E. 24-2, 52.) Plaintiff denied that he was and that he was only seeking

1

information on support groups. (Id.) When the operator continued to ask Glassburn whether he intended to harm himself, he hung up. (Id.) The operator called Plaintiff back three or four times and Glassburn reiterated that he was not interested in talking further. (Id. at 53.) During one of these calls, Plaintiff discharged a gun. (Id. at 55.) Glassburn claims that he did this to scare off coyotes and other wild animals from his property. (Id.) He also maintained that he was not intoxicated while on the phone. (Id. at 53.) At this point, the hotline operator called police to inform them that Glassburn appeared to be intoxicated, had talked about suicide, and had discharged a gun. (Andrews Depo., D.E. 22-5, 10-11.) After dispatch informed Andrews, Coble, and Elam, all three drove to Plaintiff's residence to perform a welfare check. (Id. at 12-13.) The officers parked their cars at the end of Glassburn's driveway, began walking up to the house, and announced their arrival. (Id. at 14.) Plaintiff then stepped out from his front door holding a phone in one hand and a gun in the other. (Id.) The three officers immediately retreated to behind their vehicles and ordered Glassburn to throw his gun into the yard. (Id. at 15.) It is then disputed as to whether Plaintiff pointed the weapon at the officers or was tossing it in compliance with their instructions. (Id. at 16, Glassburn Depo. 63-64.) As Glassburn was raising the gun, the three officers open fired and shot him multiple times. (Andrews Depo. 16.) Plaintiff contends that he fell to the ground and that the officers continued to fire on him as he lay on the porch. (Glassburn Depo. 64.) Police contest Glassburn's allegation and maintain that they ceased shooting once he had been neutralized. (Andrews Depo. 16.) After the officers approached the Plaintiff and collected the gun, Emergency Medical Services transported Glassburn to the hospital. (Id. at 30-31.)

II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedures states that, upon a motion of a party, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). When the motion is properly supported by proof, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. The nonmoving party must provide the court with more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). A party may not oppose a summary judgment motion by sole reliance on the pleadings, but must provide "concrete evidence supporting [his] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989); see Celotex, 477 U.S. at 324.

"A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." Pucci v. Nineteenth Dist. Court, 628 F.3d 752, 759 (6th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). If the party who bears the burden of proof at trial fails to make a showing sufficient to establish an element necessary to her case, entry of summary judgment is appropriate. Poss v. Morris (In re Morris), 260 F.3d 654, 665 (6th Cir. 2001) (quoting Celotex, 477 U.S. at 322). "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587.

III. Analysis

A. Qualified Immunity

Andrews, Coble, and Elam claim they are all entitled to the defense of qualified immunity. Under 42 U.S.C. § 1983, a plaintiff may bring a private claim against "anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." Blessing v. Freestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359, 137 L. Ed. 2d 569 (1997). However, government officials will be shielded from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grawey v. Drury, 567 F.3d 302, 309 (6th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "In assessing qualified immunity, the court, viewing the facts in the light most favorable to the plaintiff, determines whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue 'was clearly established at the time of defendant's alleged misconduct.'" Grawey, 567 F.3d at 309 (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Here, the Court will first determine whether the evidence, "viewed from the perspective of a reasonable officer on the scene, establishes a claim of excessive force in violation of the Constitution." Grawley, 567 F.3d at 309. If the Plaintiff is able to establish the existence of a constitutional violation, the Court will then determine if the constitutional right in question was a clearly established one at the time. Id. "Generally, summary judgment based on qualified immunity is proper if the officer was not on notice that his conduct was clearly unlawful." Bletz v. Gribble, 641 F.3d 743, 749 (6th Cir. 2011) (citing Higgason v. Stephens, 288 F.3d 868, 876 (6th Cir. 2002)). "However, if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper." Bletz, 641 F.3d at 749 (citing Poe v. Haydon, 853 F.2d 418, 425-26 (6th Cir. 1988)).

Plaintiff's alleges that members of the Sheriff's department engaged in excessive force violating his Fourth Amendment rights. He maintains that when officers began shooting, he was in the process of throwing his gun down. (Glassburn Depo. 64.) He claims that one of the officers ordered him to throw his weapon out into the yard. (Id. at 61.) At this point, Glassburn picked up his gun, which was sitting on a table next to the door, and stepped outside. (Id. at 62.) He then yelled "here's my fucking gun" and tossed the gun out into the yard. (Id. at 69.) Plaintiff asserts that he never pointed the gun at officers and only raised his hand to throw the weapon. (Id.) Additionally, Glassburn contends the officers continued to fire at him after he fell onto the porch. (Id. at 64) ("And I fell to the porch and laid there and felt several rounds enter my body.") The officers deny these accusations and state that Plaintiff raised his gun and pointed it toward them. (Defendant's Statement of Undisputed Material Facts, ¶9, 10.) They also insist that they did not continue to shoot at Glassburn after he collapsed onto the porch. (Id. at ¶12.)

In Bletz v. Gribble, the court affirmed the trial court's denial of summary judgment on the issue of qualified immunity where police shot a suspect as he was lowering his weapon. Bletz, 641 F.3d at 752. The court noted that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Id. at 750 (quoting Tennessee v. Garner, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)). "The ultimate question is 'whether the totality of the circumstances justified a particular sort of search or seizure.'" Bletz, 641 F.3d at 751 (quoting Garner, 471 U.S. at 9). The decedent's son, who was an eyewitness to the shooting, testified that "[the plaintiff] was lowering his gun in response to [the officer's] command to do so." Bletz, 641 F.3d at 752. While the officer maintained that the decedent did not lower his weapon, failed to comply with instructions to do so, and pointed the gun directly at the officer, the court, taking the facts in the light most favorable to the plaintiff, held that the officer had engaged in

5

excessive force. Id. The court noted that if the decedent was lowering his weapon in compliance with the officer's commands, the officer "violated [the decedent's] clearly established Fourth Amendment right to be free from deadly force." Id. The Sixth Circuit held that the decedent had the "right to be free from deadly police force while complying with police commands to disarm." Id. at 754. Unless the suspect is perceived as posing a threat, officers may not use deadly force to affect a seizure. Id. (citing Ciminillo v. Streicher, 434 F.3d 461, 468 (6th Cir. 2006)). Finding that this rule was well established in Sixth Circuit case law, the court concluded that the officer was not entitled to qualified immunity. Bletz, 641 F.3d at 754.

A Michigan district court, in McCarty v. Gatz, No. 07-15460, 2009 WL 1664462, at *9-10 (E.D. Mich. June 15, 2009), denied police officers' motion for summary judgment on qualified immunity grounds because the defendants "lacked probable cause to believe that [the decedent] posed a serious threat of danger to them or to the public." Id. at *9. The decedent was a suspect in an armed robbery. Id. When confronted by police, various witnesses testified that the decedent was shot with his hands raised in the air while moving backward. Id. Additionally, police and medical evidence corroborated the plaintiff's claim that police continued to shoot the decedent as he lay face down on the ground. Id. at *10. The court concluded these actions were a violation of the decedent's Fourth Amendment rights as he posed no danger to officers or the public. Id. Furthermore, because case law affording non-threatening suspects the right to be apprehended by non-deadly force was clearly established, the officer defendants were not entitled to qualified immunity. Id.

Viewing the facts in the light most favorable to the Plaintiff, Andrews, Coble, and Elam all violated Glassburn's Fourth Amendment rights. If Glassburn was complying with officers' instructions to toss the gun into the yard, he had the right to do so free of deadly force. See Bletz,

6

641 F.3d at 754. Simply moving his arm to throw the gun into the yard does not mean that he posed a threat to officers or others, especially when police commanded this action. Additionally, the officers engaged in excessive force if they continued to shoot the Plaintiff while he was lying on the porch. Therefore, viewing Plaintiff's facts in a light favorable to him, the police officers engaged in excessive force, violating Glassburn's Fourth Amendment rights, and satisfying the first prong of Saucier.

The Court next turns to whether the constitutional right at issue was well established at the time of the incident. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (internal citations omitted). "In order to determine whether a constitutional right is clearly established, we 'look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit], and finally to decisions of other Circuits." Cummings v. City of Akron, 418 F.3d 676, 687 (6th Cir. 2005) (quoting Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994)). Given that the Supreme Court and Sixth Circuit have clearly maintained that "individuals have a right not to be shot unless they are perceived as posing a threat to officers or others," Ciminillo, 434 F.3d at 468, the constitutional right at issue here was well established at the time of the shooting. See Garner, 471 U.S. at 1 (holding that an officer may only use deadly force if the suspect poses a significant threat to the officer or others). Neither a suspect who is complying with police instructions to disarm nor an incapacitated suspect lying on the ground pose a threat to officers or

7

others. Accordingly, the Court holds that evidence has been presented by the Plaintiff for which a jury could conclude that Andrews, Coble, and Elam violated Glassburn's clearly established constitutional rights and are consequently not entitled to qualified immunity. The Defendants' motion for summary judgment on this issue is therefore DENIED.

B. Individual Capacity Claims Against the Sheriff

The parties agree that those claims brought against Sheriff Wilson in his individual capacity should be dismissed. (Plaintiff's Response to Defendants' Motion for Summary Judgment, D.E. 24, pg. 3.) Accordingly, summary judgment is GRANTED as to this issue.

C. Official Capacity Claims Against Wilson, Andrews, Coble, and Elam

As Weakley County is named as a party in this action, the Defendants argue that the official capacity claims against the individual defendants are redundant and should be dismissed. The Court agrees. "A suit against an individual in his official capacity is the equivalent of a suit against the government entity." Myers v. Potter, 422 F.3d 347, 357 (6th Cir. 2005) (quoting Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994)). Therefore, any claims against Wilson, Andrews, Coble, and Elam in their official capacities are superfluous. Summary judgment is GRANTED as to this issue.

D. Claims Against Weakley County

i. 42 U.S.C.§1983 Claims

Plaintiff asserts that Weakley County 1) failed to supervise and train its employees with regards to the use of deadly weapons, and 2) did not formulate proper policies and procedures concerning the use of force. In order to succeed on a § 1983 claim against a municipality, a plaintiff cannot simply rely on a theory of *respondeat superior*. See Board of County Comm'rs of

8

Bryan County, Okl. V. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Rather the plaintiff is required to "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. at 404. Additionally, "a showing of simple or even heightened negligence will not suffice." Culberson v. Doan, 125 F. Supp. 2d 252, 263-64 (S.D. Ohio 2000). Rather, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct casual link between the municipal action and the deprivation of federal rights." Brown, 520 U.S. at 404. Therefore, before a municipality can be held liable for the actions of its employees and officials, a plaintiff must demonstrate "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [county] and that the policy or custom caused his constitutional violation." Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001).

> Regarding the Plaintiffs allegation that county officials failed to supervise its employees,
>
> [a] plaintiff may bring an action for inadequate police supervision under § 1983. Mere negligence is insufficient; the failure must be so gross that future police misconduct is substantially certain to result. Even when gross negligence is demonstrated, a strong casual link must be established between the inadequacies in the training and supervision and the specific wrongdoing which injured the plaintiff. More specifically, a plaintiff must show both (1) contemporaneous knowledge of the offending incident or knowledge of prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate[s] are present.

Cunningham v. Reid, 337 F. Supp. 2d 1064, 1076 (W.D. Tenn. 2004). Here, the Plaintiff has not provided facts suggesting that city policymakers or officials had simultaneous knowledge of the episode involving Glassburn or evidence establishing a prior pattern of similar incidents by the

9

offending officers. Similarly, the record does not reflect that county officials engaged in either explicit or tacit approval of excessive force. Therefore, the Plaintiff's failure to supervise claim is without merit.

Plaintiff has also failed to direct the Court to any evidence corroborating his claim that officers were not sufficiently trained on the use of deadly weapons. "Inadequate training constitutes a municipal policy only if 'the need for more or different trainings is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). "It is not sufficient merely to show that a particular officer acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury." Cunningham, 337 F. Supp. 2d at 1078 (citing Simmons v. City of Philadelphia, 947 F.2d 1042, 1059-70 (3rd Cir. 1991).

In Parker v. Henderson County, Tenn., 450 F. Supp. 2d 842, 851-52 (W.D. Tenn. 2006), the court held that law enforcement officers who received forty hours of annual in-service training and were certified by the Peace Officer Standards and Training Commission ("POST") had received adequate training on the use of deadly force. Here, Andrews, Coble, and Elam had all graduated from the Tennessee Law Enforcement Training Academy which instructs officers on the appropriate use of force and firearms. Andrews and Coble had completed state mandated annual in-service in September, 2010, and all three officers were in full compliance with the POST requirements. Glassburn has presented nothing to support his allegation that officers were not adequately trained. Accordingly, because the Plaintiff has failed to establish a material question of fact, those claims against Weakley County alleging failure to train are dismissed.

10

The Court next considers Glassburn's contention that Weakley County failed to establish appropriate policies and procedures regarding the use of force. The County has a policy manual which instructs officers as to when and under what conditions a firearm may be discharged. (Mays Rpt., D.E. 22-9, 5.) Additionally, the policy stipulates that an officer may only use deadly force in an instance where "use of such force is the only reasonable alternative to protecting the life of the officer using such force." (Weakley County Sheriff's Department Manual, D.E. 22-8, 12.) This policy comports with Sixth Circuit law which allows for the use of deadly force only where a suspect is perceived to pose a threat to police or others. See Ciminillo, 434 F.3d at 468. Plaintiff has not proffered any facts establishing that the Weakley County Sheriff's Department adheres to different procedures than those enumerated in the department manual. Rather he argues that this issue should be submitted to the fact-finder so that the jury may determine the credibility of the Defendants' proof. Glassburn, however, has not provided any conflicting evidence to support his position that Weakley County failed to establish proper policies and procedures, and there is no material question of fact for a jury to resolve. Accordingly, summary judgment is GRANTED and all § 1983 claims asserted against Weakley County are dismissed.

ii. Negligence Claims

Plaintiff also alleges that the County *negligently* failed to establish proper policies and procedures regarding the use of deadly force. A § 1983 claim may not be predicated on negligence. See Yates v. City of Cleveland, 941 F.2d 444, 447 (6th Cir. 1991). This type of assertion, if allowable, would be governed by the Tennessee Governmental Tort Liability Act ("TGTLA"). "The TGTLA affirms that municipalities in Tennessee are immune from suit with certain exceptions or waivers set forth in the TGTLA." Campbell v. Anderson Cnty., 695 F. Supp. 2d 764, 777 (E.D. Tenn. 2010). Under the TGTLA, a municipality is not liable for negligence

11

where the injury arises out of a civil rights violation. See Id.; Tenn. Code Ann. § 29-20-205. Because Plaintiff's claim involves an alleged violation of Plaintiff's civil rights, he cannot evade the requirement of the TGLA by framing his claim as one of negligence. See Campbell, 695 F. Supp. 2d at 778 ("Although [plaintiff] may seek to circumvent or avoid the County's immunity from suit under § 29-20-205(2) by couching some of her civil rights claims against the County in the guise of negligence, this strategy fails."). Accordingly, Weakley County is entitled to immunity from suit under the "civil rights" exception codified in Tenn. Code Ann. § 29-20-205(2). Plaintiff's claim for negligent failure to establish policies and procedures is therefore dismissed.

## IV. Conclusion

Based on the above reasons, Defendants' motion for summary judgment is GRANTED as to Plaintiff's claims against Sheriff Wilson in his individual capacity, the individual defendants in their official capacities, and Weakley County. These actions are hereby DISMISSED. Defendants motion for summary judgment as to those claims against Andrews, Coble, and Elam in their individual capacities is DENIED.

IT IS SO ORDERED this 7th day of August, 2013.

                                                s/ J. DANIEL BREEN
                                                UNITED STATES DISTRICT JUDGE